IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Michael Novak, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No.  2:19-718 |
| | ) |
| Andrew M. Saul, Commissioner of Social Security,[1] | ) |
| | ) |
| Defendant. | ) |

AMBROSE, Senior District Judge

**OPINION**
and
**ORDER OF COURT**

**SYNOPSIS**

Pending before the Court are Cross-Motions for Summary Judgment.  [ECF Nos. 8, 10]. Both parties have filed Briefs in Support of their Motions. [ECF Nos. 9, 19]. After careful consideration of the submissions of the parties, and based on my Opinion set forth below, I am denying Plaintiff's Motion for Summary Judgment and granting Defendant's Motion for Summary Judgment.

**I. BACKGROUND**

Plaintiff has brought this action for review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB")

---

[1] Andrew M. Saul became the Commissioner of Social Security on June 18, 2019, and is automatically substituted as the Defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).

under Title II of the Social Security Act ("Act"). On or about March 23, 2016, Plaintiff applied for DIB. [ECF No. 6-7 (Ex. 1D)]. In his application, he alleged that since June 30, 2015, he has been disabled due to spinal stenosis, arthritis – both shoulders, torn rotator cuff, high blood pressure, high cholesterol, obesity, diabetes, and hypertension. [ECF No. 6-8 (Ex. 2E)]. His date last insured is September 30, 2020. [ECF No. 6-2 at 26-27].[2] The state agency denied his claims initially, and he requested an administrative hearing. Administrative Law Judge ("ALJ") Melvin B. Werner held a video hearing on April 20, 2018, at which Plaintiff was represented by counsel. [ECF No. 6-3]. Plaintiff appeared at the hearing and testified on his own behalf. Id. A vocational expert also was present at the hearing and testified. Id. at 70-76. In a decision dated May 31, 2018, the ALJ found that Plaintiff could return to his past relevant work as a customer service representative as generally performed and, therefore, that Plaintiff was not disabled under the Act. [ECF No. 6-2, at 25-36]. Plaintiff requested review of the ALJ's determination by the Appeals Council, but the Appeals Council denied Plaintiff's request for review. Id. at 2-6. Having exhausted all of his administrative remedies, Plaintiff filed this action.

The parties have filed Cross-Motions for Summary Judgment. [ECF Nos. 8, 10]. The issues are now ripe for my review.

## II. LEGAL ANALYSIS

### A. STANDARD OF REVIEW

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Regardless of "the meaning of 'substantial' in other contexts, the threshold for such

---

[2] To receive DIB, Plaintiff must establish that he became disabled prior to September 30, 2020, the date on which his insured status expires, or "date last insured." 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B); 20 C.F.R. § 404.131(a).

evidentiary sufficiency is not high." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (U.S. 2019). Substantial evidence has been defined as "more than a mere scintilla." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek, 139 S. Ct. at 1154. The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. Palmer v. Apfel, 995 F. Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. See 5 U.S.C. § 706.

To be eligible for social security benefits, the plaintiff must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382(a)(3)(A); Brewster v. Heckler, 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. § 404.1520. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if the impairment does not

satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. § 404.1520. The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment (steps 1-4). Dobrowolsky, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5).   Id.

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984).

**B.    WHETHER THE ALJ ERRED IN FAILING TO CONCLUDE THAT CERTAIN OF PLAINTIFF'S IMPAIRMENTS WERE SEVERE**

Plaintiff argues that the ALJ erred at step two of the sequential evaluation process in failing to find that his heart disease, diabetes, asthma, obesity, hypertension, and sleep apnea were severe impairments. [ECF No. 9, at 7-11]. The step-two inquiry into an impairment's severity "is a *de minimis* screening device to dispose of groundless claims." Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003). As set forth in 20 C.F.R. § 404.1522(a), an impairment or combination of impairments is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities. The regulations define basic work activities as the abilities or aptitudes necessary to do most jobs, including, inter alia, physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling. 20 C.F.R. § 404.1522(b). Thus, an impairment is not severe if the evidence establishes only a slight abnormality that has no more than a minimal effect on an individual's ability to work. Newell, 347

F.3d at 546; Mays v. Barnhart, 78 F. App'x 808, 811 (3d Cir. 2003); S.S.R. 85-28. Any doubt as to whether the step-two showing has been made must be resolved in favor of the claimant. Newell, 347 F.3d at 546-47. Although the Court of Appeals for the Third Circuit has commented that the Commissioner's determination to deny an applicant's request for benefits at step two should be reviewed with close scrutiny, it also has made clear that it does not suggest that a reviewing court apply a more stringent standard of review in such cases. McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004). Rather, "[t]he Commissioner's denial at step two, like one made at any other step in the sequential analysis, is to be upheld if supported by substantial evidence on the record as a whole." Id. at 360-61.

In his opinion, the ALJ concluded that Plaintiff's osteoarthritis of bilateral shoulders post-surgery and degenerative joint disease of the lumbar spine status post-surgery were severe impairments. [ECF No. 6-2, at 28-29]. The ALJ further considered, inter alia, Plaintiff's history of arteriosclerotic heart disease, diabetes, and obesity, but found that these were non-severe impairments. Id. Additionally, the ALJ determined that Plaintiff's asthma was not a medically determinable impairment. Id. Finally, the ALJ's opinion does not discuss Plaintiff's alleged hypertension or sleep apnea. Plaintiff challenges each of these step two findings and/or omissions. [ECF No. 9]. For the reasons set forth below, I disagree that reversal or remand is appropriate on this issue.

As set forth above, the ALJ found that Plaintiff's arteriosclerotic heart disease, diabetes, and obesity did not result in any functional limitations and, therefore, were non-severe. Id. The ALJ supported his analysis of the severity of these various impairments with substantial evidence as follows. Regarding Plaintiff's arteriosclerotic heart disease, the ALJ noted that, although a left cardiac catheterization performed in 2014 (prior to the disability onset date) documented mild to

5

moderate coronary artery disease, Plaintiff was not treated by a cardiologist again until August 2017 when he was referred for arrythmia. [ECF No. 6-2, at 28 (citing Ex. 24F)]. As of September 2017, Plaintiff was asymptomatic. Id. (citing Ex. 23F/5). The ALJ acknowledged that Plaintiff's condition subsequently declined and that a cardiac catheterization on January 23, 2018 demonstrated triple vessel disease necessitating a coronary artery bypass graft on January 26, 2018. Id. (citing Ex. 24F). The ALJ further noted, however, that the cardiologist's follow-up notes documented that Plaintiff was doing well with no active cardiac complaints. Id. Based on the record evidence, the ALJ justifiably concluded that, although severe at the time of the procedure, there was no indication that the duration requirements for establishing disability (expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months) would likely be met. Id. at 28.[3]

With respect to Plaintiff's diabetes, the ALJ noted that the record does not contain any documentation or other evidence of significant problems or physician-imposed functional limitations because of that impairment. Id. On appeal, Plaintiff does not point to any such documentation or medical evidence. Rather, he cites only his own hearing testimony that he experiences blood-sugar spikes and neuropathy, and statistics that between 1/3 and 1/2 of diabetics have some form of peripheral neuropathy. [ECF No. 9, at 8-9]. Because the record lacks

---

[3] In an effort to demonstrate continuity of cardiac symptoms, Plaintiff contends that medical records from 2017 indicate that he suffered certain cardiac conditions as of at least March 7, 2016. [ECF No. 9, citing R. 1009, 1030, 1054]. As Defendant notes, however, these records list the conditions to which Plaintiff points as "pertinent negatives." See R. 1009, 1030, 1054 (Ex. 26F). "Pertinent negative" in medical terminology means "An element of the patient's history that aids diagnosis because the patient denies that it is present." https://medical-dictionary.thefreedictionary.com/pertinent+negative#  (last visited 9/21/2020). Plaintiff further asserts that he had a defibrillator implanted in November 2018 as further support for meeting the duration requirement. [ECF No. 9, at 8]. This circumstance, even if true, occurred well after the administrative hearing and, thus, is not appropriate for me to consider on appeal. See Matthews v. Apfel, 239 F.3d 589, 594 (3d Cir. 2001) (evidence not before the ALJ "cannot be used to argue that the ALJ's decision was not supported by substantial evidence").

objective evidence supporting Plaintiff's neuropathy assertions or otherwise pointing to any functional limitations relating to his diabetes, the ALJ did not err in his step-two analysis.

With respect to Plaintiff's obesity, the ALJ cited Plaintiff's 2016 gastric bypass surgery as well as follow-up notes indicating that Plaintiff was doing well with no complications and that he had lost 19 pounds, or 13 percent of his body weight, since the surgery. [ECF No. 6-2, at 28]. The ALJ explained that he considered the potential impact of Plaintiff's obesity in accordance with S.S.R. 02-01p, and that there was no evidence of any specific or quantifiable impact on Plaintiff's pulmonary, musculoskeletal, endocrine, or cardiac functioning. Id. Based on these findings and lack of evidence, the ALJ appropriately concluded that Plaintiff's obesity was non-severe. See S.S.R. 02-01p (an ALJ may find obesity to be non-severe if the evidence fails to establish that the obesity "significantly limits [the claimant's] physical or mental ability to do basic work activities").[4]

In addition, and in any event, the ALJ did not deny Plaintiff's application for benefits at step two of the analysis. Rather, the ALJ found in Plaintiff's favor at step two when he concluded that Plaintiff's osteoarthritis and degenerative joint disease were severe impairments. [ECF No. 6-2 at 28]. The ALJ ruled against Plaintiff later in the sequential evaluation process, after concluding that his residual functional capacity was sufficient to enable him to perform his past relevant work. Id. at 31-36. Because the ALJ found in Plaintiff's favor at step two and proceeded with the sequential analysis, even if he had erroneously concluded that the above impairments were not severe, any such error was harmless. See Salles v. Comm'r of Soc. Sec., 229 F. App'x 140, 144-45 & n.2 (3d Cir. 2007) (citing Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005)); see also, e.g., ECF

---

[4] S.S.R. 02-01p has since been rescinded and replaced by S.S.R. 19-2p. S.S.R. 19-2p, however, was not effective until May 20, 2019, and, as such, does not apply to the present claim. See S.S.R. 19-2p, n.14 ("[W]e will use this SSR on and after its applicable date in any case in which we make a determination or decision. We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions.").

No.6-2 (ALJ Opinion) at 31 (noting that he considered all of Plaintiff's symptoms in determining his RFC); 28 (considering obesity and stating that Plaintiff's "weight, including the impact on his ability to ambulate as well as his other body systems, has been considered within the limitations of [his] residual functional capacity described below"); 34 ("[D]ue to his history of bypass surgery a cold temperature exposure limitation also appears plausible."); ECF No. 6-4 (Ex. 1A) (state agency physician opinion, which the ALJ gave great weight, citing diabetes mellitus as support for postural limitations identical to those contained in the RFC).

Plaintiff additionally alleges that the ALJ erred in finding that his asthma was not a medically determinable impairment. [ECF No. 9, at 9-10].[5] Defendant acknowledges that the ALJ appears to have overlooked references to an asthma diagnosis and prescriptions for an albuterol inhaler in the record. [ECF No. 11, at 13-14 and records cited therein]. I agree with Defendant, however, that any error in this regard is harmless. Plaintiff did not assert disability due to asthma or other breathing issues in his DIB application, and he does not cite to or aver any functional limitations related to his asthma. The records to which he points likewise do not document any asthma-related restrictions. Moreover, when the ALJ asked him at the hearing if he had a diagnosis that caused "chronic breathing problems," Plaintiff answered "no." [ECF No. 6-3, at 71]. Further, the ALJ gave great weight to the opinion of the state agency medical consultant, Paul Reardon, M.D., who considered asthma to be a severe impairment, but did not find any limitations beyond those contained in the ALJ's RFC finding. [ECF No. 6-2, at 30, 34-35]. The ALJ incorporated all of Dr. Reardon's restrictions, and more, into the RFC determination. Id.

---

[5] A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques . . . [and] must be established by objective medical evidence." 20 C.F.R. § 404.1521. A mere diagnosis or subjective statement of symptoms alone is insufficient to demonstrate a medically determinable impairment for social security purposes. Id.

Finally, Plaintiff argues that the ALJ erred in failing to mention at all his sleep apnea and hypertension diagnoses at step two. [ECF No. 9, at 11]. Again, even if the ALJ should have acknowledged these conditions, there is no indication whatsoever that these impairments significantly limited Plaintiff's ability to do basic work activities or would have, alone or in combination with his other impairments, rendered him unable to perform his past relevant work. Although diagnosed with sleep apnea in January 2016, Plaintiff did not list it as a disabling impairment in his March 2016 DIB application, and there is no indication that his treatment with a CPAP machine was ineffective. Plaintiff listed hypertension in his DIB application, but did not testify to any functional limitations related to hypertension. He likewise fails to point to any medical records or other evidence documenting any limitations related to these conditions. Furthermore, Dr. Reardon considered Plaintiff's hypertension and sleep apnea in combination with his other impairments, and opined that he could perform a modified range of light work, including his past relevant work. [ECF No. 6-4 (Ex. 1A)]. As set forth above, the ALJ gave great weight to Dr. Reardon's opinion and crafted an RFC containing even greater restrictions. For all of these reasons, any failure to discuss sleep apnea or hypertension was harmless error.

In short, the ALJ's step two findings are supported by substantial evidence and/or any error in this regard was harmless.

### C. **WHETHER THE ALJ IMPROPERLY DISREGARDED CERTAIN MEDICAL OPINION EVIDENCE**

Plaintiff argues that the ALJ erred in assigning little weight to the opinions of his treating orthopedist, Volker Musahl, M.D., and Dr. Musahl's assistant, Jamie Macurak, that Plaintiff could only occasionally perform gripping, grasping, fine manipulation, reaching at shoulder level, and pushing or pulling arm controls, and that he only could lift ten pounds occasionally. [ECF No. 9, at 11-14]. After careful consideration, I disagree.

The amount of weight accorded to medical opinions is well-established. Generally, the opinions of a claimant's treating physicians are entitled to substantial and, at times, even controlling weight. 20 C.F.R. § 404.1527.[6] To be entitled to controlling weight, however, the treating physician's opinion must be well supported by medical techniques and consistent with the other substantial evidence of record. See Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001). To determine the weight of a treating physician's opinion, the ALJ may consider a number of factors, including consistency, length of treatment, corroborating evidence, and supportability. 20 C.F.R. § 404.1527. As the Court of Appeals for the Third Circuit has explained:

> "A cardinal principle guiding disability determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)). However, "where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit" and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence. Id. Similarly, under 20 C.F.R. § [404.1527](d)(2), the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record.

Becker v. Comm'r of Soc. Sec. Admin., 403 F. App'x 679, 686 (3d Cir. 2010). Although the ALJ may choose whom to credit when faced with a conflict, he "cannot reject evidence for no reason or for the wrong reason." Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 505 (3d Cir. 2009).

On or about January 30, 2018, Dr. Musahl completed a one-page upper extremity function questionnaire in which he opined that Plaintiff could occasionally (10-33% of the time) lift up to ten pounds, reach at shoulder level or below, grip and/or grasp, engage in fine manipulation, and push or pull arm controls; and could rarely (0-9% of the time) engage in overhead reaching. [ECF

---

[6] Although the regulations governing the evaluation of medical evidence were recently amended (and S.S.R. 06-03p concomitantly rescinded), the version effective March 27, 2017, does not apply to the present claim. See 20 C.F.R. § 404.1527 (2017); 20 C.F.R. § 404.1520c (2017).

No. 6-24, Ex. 21F]. Dr. Musahl's assistant, Jamie Macurak, PA-C, signed an identical questionnaire on September 16, 2016, except that he opined Plaintiff could only rarely reach at shoulder level or below and rarely push or pull arm controls. [ECF No. 6-21 (Ex. 17F)]. As Plaintiff acknowledges in his brief, the ALJ considered these opinions and gave them little weight. [ECF No. 9, at 11-12; ECF No. 6-2 at 35]. Specifically, the ALJ noted that the medical records of Plaintiff's examinations did not demonstrate objective findings supporting reduced grip strength or dexterity and that Plaintiff's muscle strength consistently was rated 5/5. [ECF No. 6-2, at 35 (citing Ex. 22F)]. The ALJ concluded that this medical evidence did not support Dr. Musahl's opinion that Plaintiff could only occasionally perform manipulative tasks including fine manipulation. The ALJ also gave great weight to state agency physician Dr. Reardon, who opined, inter alia, that Plaintiff was not limited in fingering or handling. [ECF No. 6-4 (Ex. 1A)]. With respect to PA Jamie Macurak's 2016 questionnaire, the ALJ appropriately cited to then-effective S.S.R. 06-03p, which addresses the weight given to non-acceptable medical sources including physician assistants. [ECF No. 6-2, at 35]. In addition to the fact that PA Macurak was not an acceptable medical source who could render a medical opinion under the regulations,[7] the ALJ noted that his opinion was more restrictive than that of Dr. Musahl and both opinions were inconsistent with the underlying treatment records and other medical evidence, including Dr. Reardon's opinion. Id. at 34-35.

    Contrary to Plaintiff's assertions, these are valid and acceptable reasons for discounting

---

[7] Under then-applicable regulations, a physician assistant is not "an acceptable medical source" in assessing a claimant's disability but, rather, is considered an "other source." S.S.R. 06-03p. As such, although the ALJ was required to (and did) consider PA Macurak's questionnaire, a physician assistant cannot give medical opinions and cannot be considered a treating source whose opinions may be entitled to controlling weight. Id.; see also Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361-62 (3d Cir. 2011); Hartranft v. Apfel, 181 F.3d 358, 361 (3d Cir. 1999); 20 C.F.R. §§ 404.1502; 404.1527(a).

opinion evidence. See 20 C.F.R. § 404.1527; S.S.R. 06-03p.[8] Although Plaintiff urges that the treating physician rule should govern, that doctrine does not require ALJs to give controlling weight to treating physician opinions that, as here, are inconsistent with or unsupported by underlying treatment records and other record evidence. See 20 C.F.R. § 404.1527. Although Plaintiff takes issue with the ALJ's failure to credit Dr. Musahl's manipulation limitations, he fails to cite any medical evidence or objective findings supporting his claims of reduced grip strength or dexterity. As stated previously, Plaintiff's subjective testimony that he experiences neuropathy does not substitute for objective medical evidence establishing the same.[9]

For all of these reasons, I find that the ALJ properly evaluated the medical opinion evidence using appropriate factors as set forth in the then-applicable regulations and that substantial evidence of record supports the ALJ's weighing of those opinions. See ECF No. 6-2 at 34-35 (citing, inter alia, Exs. 1A, 1E-16E, 1F-26F and Plaintiff's testimony).

D. **WHETHER THE ALJ IMPROPERLY DETERMINED PLAINTIFF'S RFC**

Plaintiff takes issue with the ALJ's RFC finding, arguing that there is substantial evidence that Plaintiff is unable to physically do the work noted in that finding. [ECF No. 9, at 14-15]. In particular, Plaintiff complains that the RFC finding fails to account for all of Plaintiff's limitations,

---

[8] Plaintiff's suggestion that the ALJ failed to apply the correct regulations (ECF No. 9, at 12-13) is misplaced. The ALJ repeatedly cited and applied the regulations (20 C.F.R. § 404.1527), social security rulings (06-03p, 96-2p), and associated standards in effect at the time of Plaintiff's claims in this case. [ECF No. 6-2, at 31, 35].

[9] In this regard, the ALJ did not, as Plaintiff asserts, err in considering Plaintiff's 5/5 muscle strength rating in rejecting Dr. Musahl's opinion that Plaintiff could only occasionally perform manipulative tasks including fine manipulation. [ECF No. 9, at 14]. Even If muscle strength does not refer directly to grip strength or dexterity, the 5/5 rating nevertheless is some evidence supporting a conclusion that Plaintiff's limitations are less than Dr. Musahl opined. Indeed, the record to which the ALJ cites does not set forth any limitations on grip strength or dexterity and reflects a "[g]rossly normal exam of upper extremities." See ECF No. 6-2, at 35 (citing Ex. 22F).

especially the neuropathy in his hands. See id. Plaintiff again asserts that the ALJ erroneously disregarded the opinions of Dr. Musahl and PA Macurak and improperly based his RFC determination on his own lay opinion. This argument is without merit.

As an initial matter, the applicable standard is not whether there is evidence to establish Plaintiff's position, but, rather, whether there is substantial evidence to support the ALJ's finding. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Thus, to the extent Plaintiff's argument is that substantial evidence supports his position, such argument is misplaced. Moreover, as previously discussed, the ALJ appropriately addressed the opinions of Dr. Musahl and PA Macurak (and any other medical opinions of record) and weighed them properly.

Ultimately, the responsibility for determining a claimant's RFC rests with the ALJ. 20 C.F.R. §§ 404.1527(d); 404.1546; Chandler, 667 F.3d at 361. Here, the ALJ did not discount Plaintiff's symptoms entirely and included restrictions in his RFC finding related to Plaintiff's credibly-established impairments, including a limitation to light work with the following additional limitations: occasional climbing of ramps or stairs, but avoiding climbing ladders, ropes, and scaffolds; occasional balancing, stooping, crouching, crawling, or kneeling; occasional reaching with his right upper extremity; should avoid concentrated exposure to extreme cold, vibration and hazards (unprotected height or machinery with exposed moving parts);and would require the need to alternate positions every 20 to 30 minutes from sitting to standing and vice versa. [ECF No. 6-2, at 31]. As set forth above, the ALJ supported this RFC finding with substantial evidence, including, inter alia, Plaintiff's treatment records; social security forms; x-ray and MRI results; other objective medical findings; medical opinion evidence; medication history; and activities of daily living. See id. at 31-35 (citing, inter alia, Exs. 1A, 1F, 2F, 3F, 6F, 7F, 16F, 17F, 18F, 20F, 21F, 22F, 23F, and Hearing Testimony).

Because the ALJ's RFC generously accounted for the limitations established by the evidence of record, and his findings are supported by substantial evidence, I find that the ALJ did not err in formulating Plaintiff's RFC. Accordingly, there is no basis for remand on this issue.

**E. WHETHER THE ALJ IMPROPERLY DISREGARDED THE VE TESTIMONY AND RELIED ON AN INACCURATE HYPOTHETICAL QUESTION**

Plaintiff argues that the ALJ improperly disregarded the testimony of the VE that limitations posed by neuropathy on the use of Plaintiff's hands would preclude his past work as well as other work. [ECF No. 9, at 15-16]. I disagree. It is well-settled that the law only requires the ALJ to include limitations supported by the record in his hypothetical question to the vocational expert. Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987); Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984). Here, the substantial evidence cited above shows that the hypothetical questions the ALJ adopted accurately reflected Plaintiff's impairments. See ECF Nos. 6-2, at 35-36; 6-3. Plaintiff's argument that the ALJ improperly evaluated the severity of his impairments and erred in failing to include certain limitations in the RFC finding are without merit. Because the ALJ properly considered Plaintiff's limitations supported by the record, and the hypothetical questions on which the ALJ relied accurately reflected those limitations, I find no error on this issue.

**F. WHETHER THE ALJ DENIED PLAINTIFF DUE PROCESS**

In conclusory fashion, Plaintiff contends that the ALJ denied Plaintiff due process and abused his discretion by refusing to leave the record open at the close of the hearing so that Plaintiff's counsel could submit additional cardiology and pain management records. [ECF No. 9, at 16]. This argument is without merit. Plaintiff has not cited any authority supporting his position and admits that whether or not to close the record is within the ALJ's discretion. Id. "As long as there is sufficient evidence in the record for him to make a decision regarding the claimant's disability, it is within the discretion of an ALJ to close the record." Kendall v. Astrue, No. CIV.A.

2:10-263-DCR, 2011 WL 4388794, at *5 (E.D. Ky. Sept. 20, 2011). Plaintiff has not identified any obvious gaps in the record or otherwise explained how the alleged missing records rendered the record insufficient for the ALJ to reach a decision. As set forth above, I find that the record evidence before the ALJ was sufficient for him to make a disability decision and that he did not abuse his discretion or violate due process in declining to keep the record open post-hearing.[10]

### III.  CONCLUSION

For all of the foregoing reasons, Defendant's Motion for Summary Judgment is granted and Plaintiff's Motion for Summary Judgment is denied. An appropriate Order follows.

---

[10] I further note that, although the ALJ declined to keep the record open because the supplemental evidence was unnecessary, he informed Plaintiff's counsel that he would entertain a motion to reopen the record and counsel was welcome to submit the records for consideration if obtained before he issued his decision. [ECF No. 6-3, at 76-77].

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Michael Novak,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>Andrew M. Saul, Commissioner of Social Security,[1]<br><br>　　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>) Civil Action No.　2:19-718<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

AMBROSE, Senior District Judge

## ORDER OF COURT

　　AND NOW, this 28th day of September, 2020, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ordered that the decision of the ALJ is affirmed and that Plaintiff's Motion for Summary Judgment [ECF No. 8] is DENIED and that Defendant's Motion for Summary Judgment [ECF No. 10] is GRANTED.

　　　　　　　　　　　　　　　　　BY THE COURT:

　　　　　　　　　　　　　　　　　/s/ Donetta W. Ambrose
　　　　　　　　　　　　　　　　　Donetta W. Ambrose
　　　　　　　　　　　　　　　　　U.S. Senior District Judge

---

[1] Andrew M. Saul became the Commissioner of Social Security on June 18, 2019, and is automatically substituted as the Defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).